UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CESARE WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-CV-4549 |
| | § | |
| SPINDLETOP FILMS, L.L.C., | § | |
| | § | |
| Defendant. | § | |

Pending before this Court are Defendant's Motion to Dismiss, or in the Alternative for a More Definite Statement (Doc. No. 14), and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 15). After considering both motions, all responses thereto, the parties' supplemental briefings, and the applicable law, the Court finds that Defendant's Motion to Dismiss must be GRANTED. Plaintiff's Motion for Partial Summary Judgment must be DENIED as moot.

I.   BACKGROUND[1]

Plaintiff Cesare Wright ("Wright") is a documentary filmmaker. In 2007, Wright, Chris Baker ("Baker"), Jeff Caperton ("Caperton"), and Dani DeLay Ferro ("Ferro") agreed to produce a documentary film on the talk radio industry with the working title "Don't Tell me What to Think" (the "Film"). (Pl. Am. Compl., Doc. No. 13 ¶¶ 4-6.) Baker, Caperton, and Ferro created the entity Spindletop Films, LLC ("Spindletop") for the purpose of developing, producing, and promoting "film, television, and documentary programs with an emphasis on supporting, demonstrating and communicating a 'Value

---

[1] In considering a Rule 12(b)(1) motion to dismiss, the Court accepts the factual allegations in a plaintiff's complaint as true. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

Based message' that will instill and support real values back into American culture." (*Id.* ¶ 10.) Wright's understanding was that he would create the film, that Spindletop would pay all of the associated expenses, and that the two would then share ownership rights in the film. (*Id.* ¶ 6.) The parties do not have a written contract. (*Id.* ¶ 95.)

In June 2007, Spindletop prepared a "Project Overview" to be used in soliciting investments. (Doc. No. 13, Ex. 1.) The Project Overview includes a budget for Wright's production costs and equipment needs. (*Id.*) After Spindletop prepared the Project Overview, Wright sent a detailed list of equipment needs and pricing to Caperton, and suggested that Caperton purchase this equipment for Kino-Eye Center, a 501(c)(3) nonprofit organization of which Wright was the co-founder and president. (Pl. Am. Compl. ¶ 17.) Wright informed Caperton that the transaction would be free from sales tax, and that Spindletop could account for the purchase as a tax deductible donation. (*Id.*) Caperton agreed to purchase the equipment for Kino-Eye Center. (Doc. No. 13, Ex. 2.) In July 2007, Wright sent Spindletop an acknowledgement letter for tax deduction purposes. (*Id.* ¶ 24.)

Over the next two and a half years, the relationship between Wright and Spindletop devolved. Caperton allegedly made a number of payments to himself from the Spindletop account, but he fell behind on payments to Wright. (*Id.* ¶¶ 23-90.) Spindletop's failure to pay Wright all amounts owed on the project led Wright to expend a significant amount of his own money on the Film. (*Id.* ¶ 85.)

On March 17, 2007, Spindletop and Caperton sent a demand letter to Wright stating:

> Despite [Spindletop's] compliance with the terms of [the parties'] agreement, you have failed to complete the Film and to provide

2

> [Spindletop] with the Film's footage, much less the agreed-upon finished documentary. Instead, you are apparently holding the Film footage and equipment for ransom, making outrageous demands for additional compensation and rights to the Film to which you are not entitled and upon which the parties never agreed. As the sole owner, or at the very least joint owner, of the copyright in the Film, [Spindletop] is entitled to the Film footage you are wrongfully withholding, and [Spindletop] hereby demands its return. . . . Further, [Spindletop] has learned that you fraudulently altered the Documentary Release provided to you by [Spindletop] so that the Release asserts that you, instead of [Spindletop], have all of the rights, title, or property interest in the Film, which you know to be blatantly false and which is actionable."

(Doc. No. 22, Ex. 1.) The letter also warns Wright that he is potentially liable for conversion, fraud, and under the Texas Theft Liability Act ("TTLA"), and that, if he does not return the film footage and the equipment purchased for the film's production, Spindletop and Caperton will file a petition seeking the return of the film footage and equipment, as well as a temporary restraining order enjoining Wright from using, distributing, altering, or destroying the footage. (*Id.*) On April 14, 2010, Spindletop initiated an action against Wright in Harris County district court requesting declaratory judgment, a temporary restraining order, and a temporary injunction. (Doc. No. 14, Ex. 2.)

In its first state court petition, Spindletop sought a declaratory judgment that it was "the sole owner of the copyright to the Film and all parts of the Film." (Doc. No. 14, Ex. 2.) In its Second Amended Petition, Spindletop amended this language to state that it sought "a declaration from this Court that: Plaintiffs are the sole owner of the Film footage, including but not limited to raw footage, outtakes, edited material and unedited material." (Doc. No. 14, Ex. 10 ¶ 29.) In its amended petition, Spindletop alleged six causes of action against Wright: (1) theft of film equipment in violation of the TTLA; (2) theft of film footage in violation of the TTLA; (3) conversion of the film equipment; (4)

conversion of film footage; (5) fraud; and (6) breach of contract. (Doc. No. 14, Ex. 11.) Spindletop states that it sued Wright "to determine ownership of certain chattel, namely the Film Footage and the film equipment, for which Spindletop paid Wright over $118,000." (Doc. No. 14, at 1.)

On November 15, 2010, one day before trial was set to begin in the state court action, Wright removed the case to federal court. (*Spindletop et al v. Wright*, 4:10-cv-04551, Doc. No. 1.) Wright premised his removal on federal question jurisdiction, asserting that Spindletop's state court claim was a copyright claim over which federal courts have original jurisdiction under 28 U.S.C. § 1338(a), and that his late removal was permissible under the revival exception to the thirty-day period for removal under 28 U.S.C. § 1446(b). Judge Harmon found that the revival exception did not apply, and remanded the case in July 2011. *Spindletop et al v. Wright*, 4:10-cv-04551, Doc. No. 19 (S.D. Tex. July 1, 2011). Judge Harmon did not decide whether federal question jurisdiction would have existed had the case been timely removed. (*Id.*)

In the meantime, Wright filed his case in this Court seeking a declaratory judgment that Wright is the owner and author of a copyright. Wright's Amended Complaint includes the following causes of action: (1) declaration of copyright ownership; (2) other declaratory relief under this Court's supplementary jurisdiction; (3) action for debt; and (4) libel. Spindletop moves to dismiss Wright's Amended Complaint on the basis that this Court has neither federal question nor diversity jurisdiction over Wright's claims. In his response to Spindletop's Motion to Dismiss, Wright seeks partial summary judgment declaring copyright ownership in his favor.

## II.   LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a federal district court. *See* Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998.)

### III. ANALYSIS

Spindletop moves to dismiss this case on the basis that the Court lacks subject matter jurisdiction to issue a declaratory judgment on Wright's copyright claims. In analyzing whether to decide or dismiss a declaratory judgment suit, district courts follow the three steps set out in *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The Court is to consider: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether the court should exercise its discretion to decide or dismiss the action. (*Id.*) Because the Court concludes that Wright's copyright claims are not justiciable, it does not consider the second or third steps of the analysis.

A "declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Orix*, 212 F.3d at 896. A declaratory judgment suit is ripe for adjudication only where an "actual controversy" exists between the parties. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009); *Orix*, 212 F.3d at 896. In order to meet the "actual controversy" requirement, a dispute must be "definite and concrete, real and

5

substantial, and admit of specific relief through a decree of a conclusive character." *Id.* (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). While declaratory judgment actions "cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts," declaratory judgment plaintiffs "need not actually expose themselves to liability before bringing suit." *Id.* (citing *MedImmune*, 529 U.S. at 127)).

Prior to the Supreme Court's holding in *MedImmune*, the Fifth Circuit utilized a two-part test to assess the "actual controversy" requirement in a declaratory judgment action. *See, e.g.*, *Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989) (adopting the Federal Circuit's standard that an "actual controversy" exists in an intellectual property case when (1) the declaratory plaintiff has a real and reasonable apprehension of litigation and (2) the declaratory plaintiff has engaged in a course of conduct that brings it into adversarial conflict with the declaratory defendant). In *MedImmune*, the Supreme Court invalidated this two-part test, and held that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

Wright argues that an actual controversy exists between the parties because (1) Spindletop's reference to copyright ownership in its demand letter and first state court petition evidence a copyright dispute; and (2) as a general matter, the facts of the state court case indicate a copyright dispute, whether or not the word "copyright" is used.

While "threats of legal action, alone, cannot create an actual controversy," *Vantage Trailers*, 567 F.3d at 751, such threats can establish an actual controversy if they

6

are sufficiently specific and concrete. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000) (citing *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 578 (7th Cir. 1994). According to Wright, the state court proceeding between the parties, as well as the demand letter sent by Spindletop and Caperton, demonstrate the substantiality of the parties' controversy. Spindletop's original state court petition sought declaratory judgment that Spindletop was "the sole owner of the copyright to the Film and all parts of the Film." (Doc. No. 14, Ex. 2.) Spindletop's letter to Wright prior to filing the lawsuit likewise refers to copyright, stating that "[a]s the sole owner, or at the very least joint owner, of the copyright in the Film, [Spindletop] is entitled to the Film footage you are wrongfully withholding." (Doc. No. 22, Ex. 1.) While Spindletop removed the reference to "copyright" from its amended state court petitions, Wright argues that it is clear from the earlier writings that the parties do, in fact, dispute copyright ownership.

On a more fundamental level, Wright argues that the state court action is a copyright claim whether or not Spindletop refers to it as such. Wright asserts that the state court claim is, in essence, a copyright claim masquerading as a dispute over chattel ownership. Wright challenges the notion that the ownership of digital film footage as chattel can be unrelated to copyright ownership in that same footage. The Court agrees to some extent that such a concept may be untenable in today's technological landscape. What was once stored on spools of film now is so often digital, often taking no physical form whatsoever. Film footage—the raw, unedited material filmed by a video camera—has little value as chattel apart from its potential to be developed into a film. Indeed, that was, at least at some point, the intended outcome for the footage at issue in this case. The

7

Court agrees with Wright that the "chattel" sought by Spindletop in the state court case is related to copyright ownership of the film footage. This relationship, coupled with the references to copyright in Spindletop's letter to Wright and its first state court petition, convinces the Court that there is some controversy between the parties with regard to copyright ownership.

What is less clear is whether the controversy is sufficiently immediate and real to render it an "actual controversy" under the Declaratory Judgment Act. *See Vantage Trailers*, 567 F.3d at 750-51 (defendant's threats of legal action against the plaintiff revealed a controversy between the parties, but the plaintiff failed to demonstrate that the controversy was sufficiently immediate and real). Spindletop's success in the state court action would entitle it to repossess the film footage and equipment from Wright, after which it might decide to complete the Film, after which it might commit acts that infringe upon Wright's alleged copyright. It is also possible, of course, that Spindletop might succeed in state court and then decide not to complete the film. In fact, in a hearing before the Court on September 28, 2011, Spindletop indicated that, even if it gets the footage back from Wright, it may never do anything with the footage. Because Spindletop does not have the original or a copy of the film footage, the possibility that it might infringe upon Wright's copyright is at this point so attenuated that it cannot be considered immediate. *Compare Starter Corp. v. Converse*, 84 F.3d 592 (2d Cir. 1996) (per curiam) (declaratory judgment was appropriate in a trademark action because there was "no uncertainty" as to how the plaintiff's marks would be used) with *Vantage Trailers*, 567 F.3d at 750 (controversy was not immediate and real, in part because plaintiff was not "immediately prepared" to manufacture and sell the disputed product at

the time it filed suit). Because the controversy between Wright and Spindletop is not sufficiently immediate and real, the Court does not have jurisdiction over Wright's copyright claims. Without jurisdiction over Wright's copyright claims, the Court cannot exercise supplementary jurisdiction over Wright's other, non-copyright claims.

## IV. CONCLUSION

For the reasons stated above, Spindletop's Motion to Dismiss (Doc. No. 14) is **GRANTED.** Plaintiff's Motion for Partial Summary Judgment is **DENIED** as moot. This case is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

SIGNED at Houston, Texas on this the 23rd day of November, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE